165 So. 89

**DAVIS et al. v. BROWDER.**

**3 Div. 156.**

Supreme Court of Alabama.

Dec. 19, 1935.

R. T. Goodwyn, Jr., of Montgomery, for appellants.

John B. Scott, of Montgomery, for appellee.

KNIGHT, Justice.

Bill by appellee, W. M. Browder, as a resident and taxpayer of Montgomery county, to enjoin and restrain the appellants, as members of the board of education of Montgomery county, and W. R. Harrison, as secretary of said board, from issuing, selling, or delivering certain warrants, to refund an indebtedness incurred for school purposes by said board, and pledging the county's three-mill school tax, or a portion thereof, to secure the payment of said warrants.

The bill avers that on December 3, 1935, the board of education of Montgomery county adopted a resolution providing for the refunding of the indebtedness of the county board of education in the aggregate of $124,690.30 by the issuance of warrants, to bear interest at a rate of not exceeding 6 per centum per annum from January 10, 1936. The resolution contemplates the issuance of ten warrants, in the sum of $12,-500 each, the first to be payable on January 10, 1937, and one on the 10th day of January of each year thereafter, until all are paid. Interest on each warrant payable semi-annually.

The resolution recites that the board of education, by a resolution of said board adopted on March 5, 1935, had during the months of March, April, and May and June, 1935, issued to its employees, in payment of salaries of said employees, certain certificates of indebtedness of the county board of education, bearing interest from date of issuance at the rate of 6 per centum per annum, and being in the aggregate principal sum of $119,479.32. That the total amount due on these certificates as of January 10, 1936, would be $124,690.37, and that the board would be without funds to pay the certificates when due on January 10, 1936.

In his bill the complainant challenges the authority of the board to secure the payment of said warrants, principal, and interest, by setting aside, each year, from the proceeds of the special tax of thirty cents authorized to be levied on each $100 of taxable property in said county by the special election theretofore held in said county, a sum sufficient to pay the principal and interest of said indebtedness.

In their answer the respondents insist that under the Act of the Legislature of Alabama, approved September 6, 1927, General Acts of Legislature 1927, p. 647, as amended on July 11, 1935, General Acts of Legislature 1935, p. 596, they have ample authority to issue the warrants, and to secure the payment of the same by pledging, each year, a sufficient amount of the county three-mill tax, levied for school purposes, to take care of the warrants as they fall due.

The act of 1927, approved September 6, 1927, p. 647, entitled "An Act To provide for the consolidation of the administration and control of the public school systems in any county of not less than seventy-five thousand nor more than one hundred thousand population according to the last or any succeeding Federal Census; to establish a Board of Education, in lieu of all other city and county Boards of Education in such counties, and provide for the manner of its selection and to define its authority," was passed as a general law, though having operation at the time of its passage, and at the present time, only in such counties as have a population of "not less than seventy-five thousand nor more than one hundred thousand." Montgomery county, by reason of its population, came within the provisions of the act.

By the act, as originally passed, the administration and control of the public schools, and the public school interest, in the counties coming within its provisions were placed under the exclusive direction and management of a board of education, consisting of eight members. The act fur-

ther provided that this board "shall be in lieu of any and all existing City Boards of Education and County Boards of Education, within such Counties, which such existing City and County Boards of Education are hereby abolished."

The fourth section of the above act was amended by the Legislature of 1931, Acts of Legislature 1931, p. 438, and by this amendatory act it was provided, inter alia: "And said Board shall have full authority to refund any debts incurred by it for school purposes prior to October 1, 1931, and to secure any warrants issued in connection with any such refunding with the proceeds of any income, fixed or otherwise, which it may receive or be entitled to under the laws of Alabama for the construction, maintenance and operation of the schools of any such city and county. And the Board shall be authorized to use all monies received by said Board for any and all school purposes."

Thereafter, on July 11, 1935 (Gen.Acts 1935, p. 596, § 1), the Legislature amended section 4 of this amendatory act. But, so far as here pertinent, the only change wrought by this last amendment was to omit the words "prior to October 1, 1931."

On September 2, 1935, the Legislature passed an act which is known as Senate Bill 351 (Gen.Acts 1935, p. 728) the caption of which discloses the purpose of the act, the objects to be accomplished, and the intention of the lawmakers. The caption reads: "To establish a budget system and provide for the preparation of a budget for each county and city school system in the State; to provide that the budgeted current expenditures shall not exceed the budgeted income of each such board of education; to provide that the actual payments shall not exceed the budgeted payments except on approval of the county or city board of education and of the state superintendent of education; to provide that the actual payments shall not exceed the actual income plus balances except in the issuance of warrants for capital outlay purposes; to authorize county and city boards of education to borrow funds against the current year's revenues when necessary to pay their current expenses; to regulate and restrict borrowing for capital outlay purposes, and to authorize and regulate the issuance of warrants or notes to pay debts incurred prior to July 1, 1935."

Section 11 of this act reads: "In order to pay debts not otherwise funded which were incurred for legitimate obligations pri-

or to the first day of July, 1935, any county board of education or any city board of education may borrow money and as security therefor, or in payment of such loans, shall issue callable warrants or execute promissory notes bearing interest at a rate of not to exceed six per cent per annum, payable at such time as may be agreed upon; or may sell such warrants or notes at par and use the proceeds in the settlement of such debts. All warrants or notes so issued shall be payable out of such school funds of the county or city as may be available for such purposes. Payments of principal and interest on such warrants or certificates of indebtedness shall be arranged so as to require approximately equal payments each year over a period of not to exceed fifteen (15) years. When these outstanding debts have been funded in accordance with the provisions of this section, no other warrants may be issued or debts incurred, except in accordance with the provisions of this Act."

Section 16 of the act reads: "All laws and parts of laws, general, special or private, in conflict with the terms and provisions of this Act are hereby repealed."

The concrete question here presented is, did this General Act of September 2, 1935, repeal the provision of the previous Act, authorizing boards of education, in counties having a population of not less than 75,000 nor more than 100,000, to refund debts incurred by them for school purposes and to secure any warrants issued in connection with any such refunding with the proceeds of any income, fixed or otherwise, which they may receive or be entitled to under the laws of Alabama for the construction, maintenance, and operation of the schools of any such cities or counties? We think it had that effect.

While the act of 1927, as amended by the act of July 11, 1935, is in theory a general law, yet in its operation it is confined to only one or more counties of the state.

█ It seems to be settled in this state that a general law will not repeal by implication a local law, although in form a general law, and passed as such. Tucker v. McLendon et al., 210 Ala. 562, 98 So. 797; Board of Revenue v. Johnson, 200 Ala. 533, 76 So. 859; State ex rel. Tyson v. Houghton, 142 Ala. 90, 38 So. 761; Southern Express Co. v. Tuscaloosa, 132 Ala. 326, 31 So. 460.

██ We are not unmindful of the fact that repeal by implication is not favored in the law. It is only when two laws are so repugnant to or in conflict with each other

that it must be presumed that the Legislature intended that the latter should repeal the former. If there is a reasonable field of operation, by a just construction, for both, they will both be given effect. This is said to be preferable to repeal by implication. City of Birmingham v. Southern Express Co., 164 Ala. 529, 51 So. 159; Riggs v. Brewer, 64 Ala. 282; Herr v. Seymour, 76 Ala. 270; Wyman v. Campbell, 6 Port. 219, 31 Am.Dec. 677; State ex rel. Grace v. Smiley, Clerk, 219 Ala. 119, 121 So. 398; State ex rel. Tubbs et al. v. White, 160 Ala. 168, 49 So. 78.

We are also not unmindful of the fact that bills pending at the same time, and enacted into laws at the same session of the Legislature, are to be construed in pari materia. They are presumed not to conflict, and a field of operation will be given each, if consistent with clear intent. State ex rel. Sellers v. Murphy, 207 Ala. 290, 92 So. 661; State ex rel. Scholl v. Duncan, 162 Ala. 196, 50 So. 265.

That the act of September 2, 1935, was intended by the Legislature to apply throughout the state, in each and every county, without excepting any from its provisions and operation, seems reasonably apparent, not only from the all-inclusive language of the act, but also from the purposes which evidently inspired its passage.

To us the conclusion is inescapable that it was the purpose and determination of the lawmakers, confronted with the conditions then surrounding the state's public school system, to find some plan, and to inaugurate some system, that would bring about greater economy, and a wiser and more prudent handling of the public school funds; and, if possible, to bring expenditures within the limits of revenues, to the end that children of this generation should not be educated at the expense of those of another generation.

To limit this purpose to those counties only which did not fall within the class provided for in the act of 1927, and the amendatory act of July 11, 1935, would seem unreasonable, and do violence not only to the plain and unmistakable language of the act of September, 1935, but would be without foundation in fact upon which to rest such a conclusion.

That the act of September 2, 1935, was intended and designed to apply to every county in the state is further borne out by the fact that by section 16 of the act, it is expressly provided: "All laws and parts of laws, general, special or private, in conflict with the terms and provisions of this Act are hereby repealed."

The office of a repealing clause has had, on many occasions, the consideration of this court. It furnishes a valuable aid in ascertaining what the language of the act under consideration really means; and not what the Legislature may have intended. It certainly makes clearer the intention of the Legislature to repeal laws in conflict with the law to which this repealing clause is attached. Tucker v. McLendon et al., 210 Ala. 562, 98 So. 797; Maxwell v. State, 89 Ala. 150, 7 So. 824; State ex rel. Bibb v. Town of Warrior, 181 Ala. 642, 62 So. 69.

That the act of September 2, 1935, in the matter now under consideration, is in conflict with the similar subject dealt with in the act of 1927, and the amendatory act of July 11, 1935, is clear. In the act of September, 1935, the board of education is given authority to refund debts incurred by it for school purposes, and may issue callable warrants and notes, payable out of such school funds of the county and city as may be available for such purposes, while in the act under which appellants seek to justify their issuance of warrants, the act, as amended, authorizes the board to refund any debts incurred by it for school purposes, and to secure any warrants issued in connection with any such refunding with the proceeds of any income, fixed or otherwise, which it may receive or be entitled to under the laws of Alabama for the construction, maintenance, and the operation of the schools of any such city or county. Against such acts of the board, it was one of the evident purposes of the Legislature to guard.

That this creates a manifest and material conflict as to the powers and authority of the board under the two acts, no one can doubt. That the conflict makes the two acts, in this respect, impossible of operation together and at the same time, we are forced to conclude.

In these circumstances the provisions of the last act, September 2, 1935, must prevail.

It results, therefore, that we must hold the act of September 2, 1935, being the last legislative expression on the subject, is the sole authority of the board of education of Montgomery county to refund its indebtedness, and as such act does not authorize the pledging of the proceeds of the county's three-mill school tax to secure the warrants, the board is without authority to do so.

It follows, therefore, that the judgment of the circuit court is due to be here affirmed, and it is accordingly so ordered.

Affirmed.

THOMAS, BROWN, and FOSTER, JJ., concur.